**MUNROE, Appellant,**

**v.**

**MUNROE, Appellee.**

[Cite as *Munroe v. Munroe* (1997), 119 Ohio App.3d 530.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 70080 and 70273.

Decided April 30, 1997.

534

*John F. Seelie,* for appellant.

*Jennifer B. Munroe, pro se.*

PORTER, Presiding Judge.

Plaintiff-appellant, William C. Munroe, appeals from the divorce decree of the domestic relations court and contends that the court erred in favor of his ex-wife, Jennifer B. Munroe, defendant-appellee, in making disposition of marital and separate property and in awarding spousal support and attorney fees in the particulars hereinafter discussed. We find merit to the appeal and affirm in part and reverse in part for the reasons hereinafter stated.

Plaintiff husband and defendant wife were married October 12, 1974. They had two children, Mary K. (born October 18, 1978) and William C., Jr. (born May 5, 1980). At the time of the divorce on December 11, 1995, the husband was fifty-two years of age and the wife was age forty-eight. The husband was employed at Fairview General Hospital as a home care marketing manager with annual gross earnings of $50,460 and net earnings of $2,660 per month. The wife was employed fulltime as an office manager for Partridge Enterprises earning $16,200 annually with take-home pay of $1,034 per month.

In May 1974, prior to the marriage, the husband purchased the real property at 275 Yacht Club Drive, Rocky River for $22,000. The husband paid $4,400 down plus approximately $1,100 in closing costs for a total of $5,500. He mortgaged the $17,600 balance on his individual credit and moved into the home in July 1974.

After purchasing the property and moving in, he proposed marriage to Jennifer in September 1974 and the parties were married October 12, 1974. The wife moved into the home with her eight-year-old child from a previous marriage. At

the time the husband purchased the Yacht Club Drive real estate, there were no plans to marry. After the marriage, title to the property was placed in their joint names.

In 1978, the parties took out a $25,000 home improvement loan for a new kitchen, second floor addition, garage and other improvements. The home improvement loan ($25,000) and the balance on the husband's original mortgage ($16,000) and costs were combined and refinanced in a new $42,500 first mortgage on which they were jointly liable. Before refinancing the first mortgage, the parties had reduced the mortgage by $914 with payments from marital income. The principal balance on the first mortgage is now $30,651, a reduction in principal of $11,849 from the $42,500 mortgage taken in 1978. Also, there is now $26,578 owed on a home equity line, secured by the Yacht Club Drive property, that is a marital debt not incurred in relation to the property.

The parties stopped living together during the winter of 1992 and officially separated in March 1993. The wife and two children remained in the Yacht Club Drive property. The husband filed a complaint for divorce on February 25, 1994 on grounds of gross neglect of duty. In March 1994, the wife counterclaimed for divorce for gross neglect and incompatibility. On March 30, 1995, the wife filed her motion for support *pendente lite* with affidavit.

The case was tried from September 12 to 14, 1995. The court's decision and judgment entry were issued on December 11, 1995, granting both parties a divorce, providing for shared parenting, dividing property (both marital and separate), and awarding temporary and permanent child support ($351.50 per month per child) and spousal support ($600 per month for six years).

The husband filed a timely notice of appeal from the trial court's final divorce judgment. A subsequent appeal by the husband from an order denying his motion to tax the trial transcript as costs has been consolidated for hearing and disposition with the original case. The wife filed no appellee's brief herein.

We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.

"I. The trial court erred in not awarding the husband his separate premarital property and the passive appreciation on said property, contrary to the express mandates of Ohio Revised Code 3105.171.

"IX. The trial court erred in awarding the wife the possession and right to purchase the husband's separate property."

Assignments of Error I and IX will be addressed together as they both deal with whether the Yacht Club Drive real estate or portions thereof constitute separate property.

Under newly enacted R.C. 3105.171(B) (effective Jan. 1, 1991), "the court shall * * * determine what constitutes marital property and what constitutes separate property" in accordance with specified definitions contained in the statute. A court dividing property upon divorce "shall disburse a spouse's separate property to that spouse." R.C. 3105.171(D). "Separate property" includes "any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage; [and] passive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(ii) and (iii); *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300, 1301–1302.

Under the new statutory scheme, "the commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

"Thus, traceability has become the focus when determining whether separate property has lost its separate character after being commingled with marital property * * *. The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence to trace the asset to separate property." *Peck,* 96 Ohio App.3d at 734, 645 N.E.2d at 1302.

■ We agree with the trial court that plaintiff's premarital down payment on the home ($4,400) was the husband's separate property. However, we find that the trial court erred in not awarding plaintiff the value of any appreciation on the down payment as separate property despite commingling. It is a matter of economic certainty that some of the current enhanced market value of the home was traceable to the original down payment twenty-one years earlier.

■ Marital property includes "all income and appreciation on separate property, due to the labor, monetary or in-kind contributions of either or both spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii); *Simoni v. Simoni* (1995), 102 Ohio App.3d 628, 639, 657 N.E.2d 800, 807–808. At the same time, separate property also includes "passive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(iii); *Sauer v. Sauer* (May 30, 1996), Cuyahoga App. No. 68925, unreported, at 9, 1996 WL 284873. Appreciation as the result of the increase in the fair market value of the separate property due to its location or inflation is passive income pursuant to the statute. *Id.* at 9–10; *Nine v. Nine* (Mar. 1, 1995), Summit App. No. 16625, unreported, at 5, 1995 WL 89478. In the instant case, the Yacht Club Drive residence increased in market value from $22,000 in 1974 to $184,000 today.

■ The critical issue under this assignment of error is what portion of the current net market value of the home is separate property of the husband versus marital property to be divided with the wife. See *Sauer* at 10; *Nine.* at 5.

The trial court found that the plaintiff paid $22,000 in 1974 prior to the marriage, of which $4,400 was the down payment with a mortgage of $17,600. Therefore, plaintiff's separate property is traceable pursuant to R.C. 3105.171(A)(6)(b) since "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property except when the separate property is not traceable."

The court below found that the separate property of the husband in the Yacht Club Drive property was only the down payment he had made at the time of purchase and that "the entire appreciation in the house value from the date of marriage through the date of trial is not passive, pursuant to Ohio Revised Code § 3105.171 and therefore it is not the separate property of the Plaintiff [husband]." We disagree.

We find that the trial court did not follow the dictates of the statute and gave the plaintiff no credit for appreciation over the last twenty-one years of his investment in the separate property prior to the marriage. This court recently in *Sauer v. Sauer, supra,* at 10, provided the formula for determining the appreciation of separate property under such circumstances as follows:

$$\frac{\text{Separate Investment}}{\text{Total Investment}} \times \frac{\text{Total appreciation}}{\text{during the marriage}} = \frac{\text{Separate}}{\text{Property}}$$

$$\frac{\text{Marital Investment}}{\text{Total Investment}} \times \frac{\text{Total appreciation}}{\text{during the marriage}} = \frac{\text{Marital}}{\text{Property}}$$

This court in *Sauer* defined "separate investment" in the equation to be "the value of the property on the date the parties were married." *Sauer* at 6, citing *Nine v. Nine, supra.* However, it is more accurate to say that "separate investment" is the value of that spouse's interest in the property, not the whole value of the property, on the date the parties were married. The "total investment" portion of the equation was defined as the separate property plus the investment of the marital funds. *Id.*

Therefore, in the instant case, the amount of the separate investment would be the value of the husband's interest in the property on the date of the marriage, which was the $4,400 down payment. The investment of the marital funds would include the $914 reduction in the first mortgage, and the $11,849 reduction in the refinanced mortgage. The $25,000 home improvement is not part of the total

investment but rather increases the base fair market value from $22,000 to $47,000 for the purposes of determining total property appreciation. The formula simply put should read as follows:

$$\frac{\text{Separate Investment of Spouse}}{\text{Total Investment}} \times \begin{array}{c} \text{Total Appreciation} \\ \text{During Marriage} \end{array} = \begin{array}{c} \text{Separate} \\ \text{Property} \end{array}$$

The separate investment equals the value of the spouse's separate investment at the time the parties were married. The total investment equals the separate investment plus the reduction in mortgage. Any improvements to the property due to the efforts of both parties raises the base fair market value for purposes of determining total appreciation.

Adapting the relevant figures to the modified *Sauer* and *Nine* equations effects the following result:

$$\frac{4400}{4400 + 12763} = 25.6 \times (184000 - 47000) = \$35,072$$

The husband would therefore be entitled to 25.6 percent of the appreciated value, or $35,072. This value is then added to his separate investment of $4,400 for a total of $39,472. Thus, if the property was sold today, of the $126,771 equity in the home ($184,000 minus the refinanced mortgage balance of $30,651 and second mortgage of $26,578), $39,472 would be the husband's separate property and $87,299 would be marital property. According to the decree, however, the wife was granted possession of the residence until the youngest child reaches eighteen years old (May 1998), at which time the parties have several options including buying the other out or selling the property. Whatever option the parties exercise, the husband should be entitled to 25.6 percent of the equity in the home, plus his original investment of $4,400. Therefore, the trial court's judgment respecting the disposition of the Yacht Club Drive property is reversed.

■ Although we find that plaintiff is to receive the appreciated value of his separate property investment as stated above, we do not find that this entitles him to the entire residence. The entire property is not separate property, but a substantial portion is marital property. *Nine, supra,* at 5. Therefore, we find the trial court did not abuse its discretion in permitting the defendant and the two children to reside on the property until the younger child attains majority or graduates from high school, whichever event last occurs. R.C. 3105.171(F)(3) and (J).

Assignment of Error I is sustained, and Assignment of Error IX is overruled.

"II. The trial court erred in treating the husband's separate lawsuit proceeds as marital property."

The trial court found as follows respecting the lawsuit settlement:

"[T]he monies that the plaintiff received from the lawsuit settlement [$4,000] were marital monies and not his separate monies since the cause of action upon which the lawsuit was based arose while the parties were residing together as husband and wife (1988) [and] the monetary damages sustained by plaintiff were directly related to the lost wages he incurred during the ten (10) months he was unemployed as a result of the incident which precipitated the cause of action, and which resulted in the lawsuit settlement."

The husband contends that the settlement amount of his defamation lawsuit did not constitute lost wages, and that there is no support in the record for such a conclusion, which is contrary to R.C. 3105.171(A)(6)(vi), which defines "separate property" as follows:

"Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets."

■ A personal injury settlement is marital property only to the extent that lost earnings and medical expenses have adversely affected the marital estate. *Everhardt v. Everhardt* (1991), 77 Ohio App.3d 396, 399, 602 N.E.2d 701, 703; *Hartzell v. Hartzell* (1993), 90 Ohio App.3d 385, 386, 629 N.E.2d 491, 491–492.

Plaintiff herein brought two lawsuits against his former employer, Bede Industries. At trial, plaintiff testified that his first lawsuit against Bede concerned his severance package and a buyout regarding some real estate he owned with the company. The proceeds from the first Bede case were used to pay off marital debt, litigation costs of this divorce action and his second suit against Bede.

In his second suit against Bede, defendant claimed wrongful imprisonment and defamation arising from Bede's accusation that plaintiff had stolen from the company. This case was settled for $4,000, which plaintiff used to buy a one-quarter partnership interest in a twenty-five-foot motorboat.

■ At trial, defendant initially testified that he did not think his second suit concerned lost wages. However, he also testified that the false arrest/defamation affected him psychologically and caused him to be unable to work. Therefore, arguably the $4,000 settlement was for lost wages. Since the settlement agreement was confidential, there is no evidence as to how the damages were allocated among his injuries. Accordingly, we find that the trial court did not abuse its discretion in finding that the $4,000 constituted marital property.

Assignment of Error II is overruled.

"III. The trial court erred in awarding spousal support without consideration of the statutory factors as applied to both parties.

"IV. The trial court erred in awarding 9 years of spousal support after a 19-year marriage."

The husband complains that the trial court failed to give adequate consideration to the husband's needs in awarding spousal support of $600 per month for a period of six years to the wife.

 This court set forth the standards to be observed in reviewing an award of spousal support in *Terry v. Terry* (1994), 99 Ohio App.3d 228, 234–235, 650 N.E.2d 184, 188:

"Alimony comprises two components: a division of marital assets and liabilities, and periodic payments for sustenance and support. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 95, 518 N.E.2d 1197, 1200; *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83, 86. The court has equitable authority to divide and distribute the marital estate, and then consider whether an award of sustenance alimony would be appropriate. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 541 N.E.2d 597. The trial court has broad, but not unfettered, discretion in deciding what is equitable under the circumstances. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 322, 421 N.E.2d 1293, 1298. The trial court must set forth a factual basis or rationale which supports the award of spousal support. *Kaechele, supra,* at paragraph two of the syllabus; *Moro v. Moro* (1990), 68 Ohio App.3d 630, 635, 589 N.E.2d 416, 419. This court cannot substitute its judgment for that of the trial court unless, under the totality of the circumstances, the trial court abused its discretion. *Holcomb, supra,* 44 Ohio St.3d at 131, 541 N.E.2d at 599.

"The trial court derives its authority to award spousal support from R.C. 3105.18, which sets forth numerous factors the court must consider when asked to provide spousal support. Among those factors are the respective earning abilities of the parties, the relative assets and liabilities of the parties, the standard of living enjoyed by the parties, and the time and expense necessary for the spouse who is seeking spousal support to acquire education, training and experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training or job experience, and employment is, in fact, sought. See R.C. 3105.18(C)(1)."

The trial court herein made the following findings in support of its award of spousal support:

"The Court further finds that the parties have been married for 21 years, the Plaintiff is 52 years old, the Defendant is 48 years old, the Plaintiff's gross income is $50,460.00, the Defendant's gross income is $16,200.00 and the Defendant's net

income is $1,034.00 per month. The Court finds that the Defendant is unable to meet her actual living expenses (which do not include health insurance coverage for herself) in the amount of $2,266.00 per month ($1,896.00 per month per Plaintiff's Exhibit 3, plus $230.00 per month for second mortgage, plus $140.00 per month for the consolidation loan), which are reasonable and necessary, solely upon her own income. The Court finds that, after consideration of all of the factors set forth in Ohio Revised Code § 3105.18, the Defendant is in need of, and entitled to, an award of spousal support from the Plaintiff, and that an award of spousal support to the Defendant in the amount of $600.00 per month for a period of six (6) years, or until the Defendant's remarriage or cohabitation, or until either party's death, is reasonable, necessary, and appropriate under the facts and circumstances of this case. The Court finds that the Plaintiff has the financial ability to pay same."

 Given the strict standards that govern our review of the trial court's judgment in this regard, we cannot say that the trial court abused its discretion in making the award. Plaintiff argues that the trial court's findings are inadequate as they do not show that the trial court considered the husband's needs and ability to pay. However, the issue is whether the court's judgment entry and the transcript of the hearing provide sufficient details to enable this court to review the lower court's determination and whether such review shows that the lower court considered the factors specified in R.C. 3105.18(C). *Nelson v. Nimylowycz* (July 24, 1995), Cuyahoga App. No. 67901, unreported, at 8, 1995 WL 415178; *Carman v. Carman* (1996), 109 Ohio App.3d 698, 704, 672 N.E.2d 1093, 1096–1097. We find that the trial court did consider these factors as it so stated in its findings and that there is sufficient evidence to support the court's spousal support order.

The trial court was not obliged to give full credit to the living expenses that the plaintiff contends were in error. The defendant wife at trial stated that her monthly car expenses were correct, despite intense cross-examination. Her monthly gas utility expense of $140 per month was supported by budget amounts of $71 per month to $161 per month from July 1993 through August 1995. Given conflicting evidence, it was within the trial court's prerogative to believe defendant regarding her monthly expenses since the credibility of the witnesses is for the finder of fact. *Robiner v. Robiner* (Dec. 7, 1995), Cuyahoga App. No. 67195, unreported, at 30, 1995 WL 723269; *Andrades v. Andrades* (May 11, 1995), Cuyahoga App. No. 67270, unreported, at 6, 1995 WL 277090; *Bacon v. Bacon* (Jan. 31, 1991), Cuyahoga App. No. 57678, unreported, at 22, 1991 WL 8599.

In arguing the full economic impact of the spousal support award, plaintiff also calculates spousal support as including the husband's child support obligations. Plaintiff, however, does not contest the fairness of the child support obligations.

In arguing that his monthly expenses exceeded his take-home pay, he has also included both the first and second mortgage payments on the Yacht Club Drive property totalling $839 per month. The trial court has clearly ordered that the defendant wife, who is occupying the property with the children, be responsible for these payments. Given these adjustments, plaintiff has monthly income of $2,083.85, while the defendant has $2,449. Given that defendant's portion includes $716.65 of child support, her net resources to provide for the home, mortgage payments and her living expenses leaves her with $1,733. We cannot say that the award was inequitable or that the court abused its discretion in its award of spousal support.

Assignments of Error III and IV are overruled.

"V. The trial court erred in awarding support *pendente lite* prior to acquiring jurisdiction."

In this assignment of error, plaintiff contends that the trial court did not have jurisdiction to award temporary spousal support prior to the filing of the divorce action. The trial court awarded temporary spousal support retroactive to February 1993, which was before the parties were separated, and a year before the divorce proceedings were filed.

A review of the court's journal entry indicates that the court incorrectly found that the plaintiff filed the divorce complaint as of February 1993, instead of the correct date of February 1994. We find that this indeed created an error in the award of temporary spousal support one year before the complaint was filed. Pursuant to R.C. 3105.18(B), the trial court has authority to award temporary spousal support "during the pendency of any divorce, or legal separation proceeding." See Civ.R. 75(M) to the same effect. No proceedings were pending until February 1994.

This court in *Rahm v. Rahm* (1974), 39 Ohio App.2d 74, 78, 68 O.O.2d 225, 228, 315 N.E.2d 495, 500, has held that "temporary alimony pending litigation may be awarded by the trial court any time after a complaint is filed and before judgment on the merits." Since the complaint in this case was not filed until February 1994, we find that the trial court could only award spousal support retroactive to that date. Therefore, we reverse the trial court's temporary spousal support order and find that temporary spousal support should be dated from February 1994. Plaintiff's arrearage in such payments should be adjusted on remand to show this correction.

Assignment of Error V is sustained.

"VI. The trial court's findings and orders regarding mortgage payments and real estate taxes are contradictory and must be modified."

▓▓ The husband contends that the trial court ordered the parties each to pay one-half of the real estate taxes on the Yacht Club Drive property. This portion of the order overlooks the fact that real estate taxes would be paid through the mortgage escrow under the court's prior order requiring the wife to make the first mortgage payments. The first mortgage on the Yacht Club Drive real estate is $599 per month, which includes real estate taxes. The trial court makes the finding that the first mortgage is payable at $599 per month.

These orders are inadvertently inconsistent and that portion of the order requiring the husband to pay one-half of the real estate taxes is vacated.

Assignment of Error VI is sustained.

"VII. The trial court erred in ordering the husband to pay the wife's attorney's fees and said order is contrary to the evidence.

"VIII. The trial court erred and discriminated against the husband in awarding interest on the wife's attorney fee award while failing to award interest on the husband's awards."

▓▓ In awarding attorney fees to the parties, we are guided by this court's statements in *McCoy v. McCoy* (1993), 91 Ohio App.3d 570, 583–584, 632 N.E.2d 1358, 1366:

"An award of alimony may be made in the form of an allowance for reasonable attorney fees. *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 89, 2 O.O.3d 65, 68, 355 N.E.2d 894, 897. Consideration must be given to the reasonableness of the fee award and to the criteria used in the granting of an alimony award. *Id.* at 90, 2 O.O.3d at 68, 355 N.E.2d at 898. On appeal, the only questions for inquiry are whether the factual conclusions upon which the trial court based the exercise of its discretion were against the manifest weight of evidence, or whether there was an abuse of discretion. *Id; Oatey v. Oatey* (1992), 83 Ohio App.3d 251, 263, 614 N.E.2d 1054, 1061; *Birath v. Birath* (1988), 53 Ohio App.3d 31, 39, 558 N.E.2d 63, 71."

▓▓ Further, the *Swanson* court cautioned:

"[T]he initial overriding consideration is the financial ability of the individual in question to meet the demands of any award. *See Rivers v. Rivers* (1968), 14 Ohio App.2d [120, 43 O.O.2d 277, 237 N.E.2d 164]. Not only must the award be within the individual's ability to pay, but it must also leave that individual the means to maintain his own health and well-being by obtaining proper food, shelter and clothing, and it must not burden him to the extent his incentive to pay is destroyed. *Blaney v. Blaney* (Iowa 1964) [256 Iowa 1151, 1153–1154], 130 N.E.2d [N.W.2d] 732, 733. *See Coleman v. Coleman* (Mo.App.1958), 318 S.W.2d 378." *Id.*, 48 Ohio App.2d at 95, 2 O.O.3d at 71, 355 N.E.2d at 901.

The trial court made the following findings of fact in awarding attorney fees of $5,000 to the wife at five-percent interest:

"The Court further finds that the Defendant has incurred attorney fees in connection with this matter in the amount of $21,240.00, of which the Defendant has paid $9,325.00, leaving a balance due on Defendant's attorney fees in the amount of $11,433.75. The Court finds that these fees are reasonable and necessary under the facts and circumstances of this case.

"The Court further finds that the Plaintiff has incurred attorney fees in connection with this matter in the amount of $12,764.00, of which the Plaintiff has paid $2,500.00, leaving a balance due on Plaintiff's attorney fees in the amount of $10,264.00.

"The Court further finds that the Defendant is entitled to an award of additional spousal support from the Plaintiff in the amount of $5,000.00, as and for a contribution toward her attorney fees which were incurred in connection with this matter. The Court finds that the Plaintiff has the financial ability to pay same, and the Defendant does not."

 Although plaintiff disputes this allowance, we fail to find any abuse of discretion in the award of such a modest amount, even though the court failed to recognize that plaintiff also owed an additional $7,500 in attorney fees to his prior counsel.

 Plaintiff also contends that the trial court erred in awarding the defendant attorney fees at five-percent interest. He contends it is unfair due to the trial court's failure to recognize the appreciation on the $4,400 of his separate property. In sustaining plaintiff's Assignment of Error I, we have remedied that complaint. Nonetheless, we find that the trial court's award of five-percent interest on defendant's attorney fees was an abuse of discretion.

 R.C. 3105.18(H) does not authorize an award of interest on attorney fees issued as part of a support order. It merely states that the fees must be reasonable. R.C. 3113.21.9 states that the court may order interest on an order issued pursuant to R.C.3105.18 if there is a failure to comply with the support order and such failure "was willful." In the case herein, we have no willful noncompliance, as the plaintiff has not yet had the opportunity to begin to pay the amount. In fairness to the decision below, it seems that the court's order would have permitted the plaintiff to wait to pay the attorney fees until the marital home was sold, if it was indeed sold. The court issued its five-percent interest order in conjunction with its order dictating what should be the proper course of action if either party is unable to buy the home and it is put up for sale. The court stated as follows:

"(3) The remaining net proceeds shall be divided equally between Plaintiff and Defendant, however out of the Plaintiff's one-half share the Defendant shall be paid the sum of $5,000.00 plus 5% interest per annum from the date hereof, as and for additional support toward her attorney fees."

▮ Plaintiff should be given the option of paying off the attorney fees without incurring the five-percent interest obligation he would incur by awaiting the sale of the Yacht Club Drive property. "A right to interest on unpaid installments of alimony accrues on the date each installment matures or becomes due, and runs until paid." *Allen v. Allen* (1990), 62 Ohio App.3d 621, 625, 577 N.E.2d 126, 128–129; *Kern v. Kern* (1990), 68 Ohio App.3d 659, 662, 589 N.E.2d 434, 436. The trial court's award of attorney fees in this case was a form of spousal support. Therefore, the interest should begin to accrue as of the date it becomes due and payable, which is as of the date of the judgment order. Therefore, if plaintiff pays defendant the lump sum attorney fees immediately, no interest will have accrued.

We remand this portion of the award to the trial court to correct its order to state that "the lump sum amount due for attorney fees shall accrue at the rate of 5% interest until paid in full."

Assignment of Error VII is overruled; Assignment of Error VIII is sustained.

"X. The trial court's refusal to tax the cost of the transcript for appeal as costs violated the appellant's right to due process and equal protection under the United States and Ohio Constitutions."

Plaintiff contends that the trial court erred in denying his motion to tax as costs the expense of preparing the transcript for appeal. This assignment of error has no merit.

▮ App.R. 24 controls the assessment of costs on appeal. App.R. 24(B), as amended July 1, 1992, provides that "costs" include the "expense incurred in preparation of the record, including the transcript of proceedings." Therefore, on appeal, the expense of preparing a transcript is included in "costs." *Kruse v. Vollmar* (1993), 85 Ohio App.3d 198, 200, 619 N.E.2d 482, 483. We find, however, that despite this provision, the trial court did not err in denying plaintiff's motion as the "court of appeals has exclusive jurisdiction under App. R.24 to assess the costs on appeal." *Crest Mgt., Inc. v. McGrath* (July 6, 1994), Summit App. No. 16579, unreported, at 3–4, 1994 WL 316556.

▮ App. R. 24(A)(4) gives this court the discretion to award costs as it sees fit when the "judgment appealed is affirmed or reversed in part or is vacated." Since we are in fact reversing the trial court's judgment in part, we order that the parties share the cost of preparing the transcript equally.

Assignment of Error X is overruled.

The judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

McMONAGLE, J., concurs.

KARPINSKI, J., concurs in part and dissents in part.

KARPINSKI, Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's disposition of the first assignment of error.

I would affirm the trial court's division of property relating to the parties' residence. The trial court awarded William Munroe his $4,400 down payment on the residence made five months before the marriage. William Munroe failed to prove any "passive," rather than active, appreciation to this separate property to warrant any greater award.

Following the marriage, the parties obtained a joint home improvement loan of $25,000, which substantially exceeded the original purchase price of $22,000, and completely transformed the property.[1] There is no evidence that the increase in value of the residence was traceable as "passive appreciation" to this modest down payment as opposed to the substantial reconstruction of the property through the intervening addition of an entire second floor, a new kitchen, a garage and other improvements. As a result, the trial court did not "abuse its discretion" when dividing the parties' interests in this property.

The majority's reliance on *Sauer v. Sauer* (May 30, 1996), Cuyahoga App. No. 68925, unreported, 1996 WL 284873, and *Nine v. Nine* (Mar. 1, 1995), Summit App. No. 16625, unreported, 1995 WL 89478, to support its argument to the contrary is misplaced. Neither case involved such significant improvements, made shortly after the marriage and more than doubling the cost of the jointly titled residence. The majority's ultimate award to William Munroe of 25.6 percent of the appreciated value of the residence is counterintuitive. At a minimum, it would appear that William Munroe's separate property, that is, his down payment of twenty percent, was diluted, not augmented to 25.6 percent, when the couple more than doubled their indebtedness on the property.

---

1. The parties held title to the property jointly and also refinanced this total indebtedness to make it a joint liability.

For these reasons, I respectfully dissent from the disposition of this assignment of error.