OPINION
This is an accelerated calendar appeal. Appellant, Jerry Polakoff, appeals from a final judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, pertaining to the classification of certain property as "marital" for purposes of distribution following a divorce. For the following reasons, we affirm the judgment of the trial court.
On October 21, 1989, appellant and appellee, Jeanne Polakoff, were married in Warren, Ohio. Three days prior to the marriage, the parties executed an antenuptial agreement in which certain provisions were made for the distribution of the parties' separate property upon divorce. In accordance with the agreement, appellee waived all claims she may have in appellant's separate property; specifically, Cortland Motors, a used-car dealership ("dealership"), and a home located at 375 Deborah Lane, Cortland, Ohio ("home").
It is undisputed that during the course of the marriage the parties maintained separate bank accounts and did not commingle their funds or assets. One child was born as issue of the marriage. On December 22, 1992, the parties separated and appellee filed an action for divorce.
On March 10, 1994, the trial court held the final contested divorce hearing and subsequently granted appellee a divorce on January 30, 1995. In its judgment entry, the trial court determined that the antenuptial agreement entered into by the parties was both fair and equitable. In addition, the trial court found that certain assets owned by appellant prior to the marriage had substantially increased in value during the course of the marriage. Although these assets were the separate property of appellant and were included in the antenuptial agreement, the trial court found that the increased value was marital property and subject to an equitable distribution.
On May 8, 1995, appellant filed a notice of appeal with this court, contesting the trial court's determination that the increased value of the dealership and home was marital property. However, we ultimately dismissed the appeal on August 14, 1995, finding that the January 30, 1995 judgment entry left several matters unresolved and that additional evidence from the parties was required before the trial court could rule on them.[1]
The trial court held a hearing on January 29, 1996, to address the outstanding matters and other issues raised since the divorce decree had been entered on January 30, 1995. On August 26, 1998, the trial court issued another judgment entry ruling on the valuation of the dealership and appellee's pension. However, the trial court failed to address the matter of appellant's child support arrearage. As a result, we remanded the case one more time for the sole purpose of addressing the amount of any child support arrearage owed by appellant.
After the trial court addressed the issue of child support arrearage, we determined that appellant's September 24, 1998 notice of appeal should be considered a premature appeal as of December 20, 1998 and that the case should proceed accordingly. However, after further consideration, we remanded the case once again so that the trial court, in light of its subsequent property distribution, could clarify its finding that the antenuptial agreement was fair and equitable.
On January 18, 2000, the trial court issued another judgment entry in which it repeated its earlier finding that the dealership and home were premarital assets of appellant. The trial court also reiterated that, pursuant to R.C. 3105.171(A)(3)(a)(iii), the increase in the value of that property was due to the labor and monetary contributions of one or both of the parties, and as a result, the increased value was marital property subject to division.
With respect to the validity of the antenuptial agreement, the trial court found that there was no evidence of fraud, duress, coercion, or overreaching, and that the agreement did not promote or encourage divorce. However, the trial court did find that the agreement was not based on full disclosure or full knowledge and understanding of the nature, value and extent of the parties' property in that it failed to protect any of appellee's assets. As a result, the trial court concluded that the antenuptial agreement was fair and equitable only to the limited extent that it accurately set forth the value of the dealership and the home at the time of the marriage.
Appellant now asserts the following assignment of error for our consideration:
 "The Trial Court [sic] erred in not upholding the terms of the antenuptial agreement between the parties after determining said antenuptial agreement was fair and equitable and binding on both parties."
In his sole assignment of error, appellant argues that the trial court erred in not abiding by the terms of the antenuptial agreement once it determined that the agreement was fair and equitable. According to appellant, the dealership and home remained exclusively in his name and that his sole ownership precluded appellee from acquiring any interest in those assets. Appellant further contends that the provisions of the agreement specifically required that each party retain his or her own separate property upon divorce irregardless of whether the other spouse contributed any personal effort, skill or service in relation to the other spouse's property.[2]
An antenuptial agreement is a contract entered into between a man and a woman in contemplation, and in consideration, of their future marriage whereby the property rights and economic interests of either the prospective wife or husband, are determined and set forth in such instrument. Gross v. Gross (1984), 11 Ohio St.3d 99,102. In Ohio, antenuptial agreements will be upheld so long as certain requirements are met. Fletcher v. Fletcher (1994),68 Ohio St.3d 464, 466, citing, Gross at paragraphs one and two of the syllabus. Those requirements are as follows:
 "Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce." Gross at paragraph two of the syllabus. See also, Popp v. Popp (Feb. 7, 1986), Trumbull App. No. 3407, unreported, at 6, 1986 Ohio App. LEXIS 5576.
Generally, antenuptial agreements are contracts, and as a result, the law of contracts applies to their interpretation and application.Fletcher at 467. Furthermore, "if the parties have freely entered into [the] agreement, * * *, [a] court should not substitute its judgment and amend the contract." Gross
at 109.
As we previously noted, appellant argues that after the trial court determined that the parties' antenuptial agreement was fair and equitable, the trial court then erred when it failed to uphold the agreement's terms. Contrary to appellant's claim, however, it is clear from the trial court's January 18, 2000 judgment entry that the trial court actually found that, based on the lack of full disclosure, the agreement was invalid for most purposes. In fact, the trial court only found that the agreement was fair and equitable with respect to the pre-set values of the dealership and the home. Accordingly, the trial court used those values when conducting the subsequent property division. See, generally, Gross
at 108-111 (where the Supreme Court of Ohio, after determining the general validity of the antenuptial agreement, held that the provisions for maintenance were unconscionable, and as a result, voidable by the wife).
After determining that the agreement was for the most part invalid, the trial court then proceeded to divide the parties' property in accordance with R.C. 3105.171. In doing so, the trial court concluded that, up to the value set out in the antenuptial agreement, the dealership and home were appellant's separate property and not subject to division. Any amount in excess of those stated values, however, were determined to be marital property and subject to an equitable division between appellant and appellee.
Trial courts have traditionally been given broad discretion over the division of property in divorce proceedings. Cherry v.Cherry (1981), 66 Ohio St.2d 348, paragraph two of the syllabus. See also, Barnes v. Barnes (July 21, 1995), Geauga App. No. 94-G-1898, unreported, at 2, 1995 WL 453136. However, the characterization of property as separate or marital is reviewed pursuant to a manifest weight of the evidence standard. Kotkowskiv. Kotkowski (Sept. 30, 1997), Portage App. No. 96-P-0238, unreported, at 2, 1997 WL 663684. As a result, an appellate court will not reweigh the evidence introduced in a trial court, but instead, will uphold the findings of the trial court when the record contains some competent and credible evidence to sustain the trial court's conclusions. Fletcher at 468. Moreover, an appellate court will indulge all reasonable presumptions consistent with the record in favor of a lower court's decisions on questions of law. Id.
R.C. 3105.171(B) requires that in any divorce proceeding, the trial court must make a determination of "what constitutes marital property and what constitutes separate property." To facilitate this determination, R.C. 3105.171 also sets forth the definitions of both marital and separate property. Marital property is defined in R.C. 3105.171(A)(3)(a) as:
 "`Marital property' means, subject to division (A)(3)(b) of this section all of the following"
"* * *
 "(iii) * * * all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]"
Separate property is defined in R.C. 3105.171(A)(6)(a) as:
 "`Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
"* * *
 "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of marriage;
 "(iii) Passive income and appreciation acquired from separate property to one spouse during the marriage;
"* * *
 "(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement[.]"
Here, the trial court found that the dealership and home were appellant's separate property and, consequently, awarded both to him. However, the trial court was still required to determine what, if any, of the parties' remaining property was marital. This included the increased value in the dealership and home.
The Supreme Court of Ohio has held that the plain language of R.C. 3105.171(A)(3)(a)(iii) unambiguously indicates that wheneither spouse makes a labor, money, or in-kind contribution that results in an increase in the value of separate property, that increase is deemed to be marital property. Middendorf v.Middendorf (1998), 82 Ohio St.3d 397, paragraph one of the syllabus. See also, Horning v. Horning (Oct. 8, 1999), Portage App. No. 98-P-0082, unreported, at 13-14, 1999 Ohio App. LEXIS 4798; Kotkowski v. Kotkowski (May 19, 1995), Portage App. No. 94-P-0027, unreported, 1995 WL 378681; Hansen v. Hansen (Dec. 11, 1992), Lake App. No. 92-L-052, unreported, 1992 WL 366885. However, appreciation that results from an increase in the fair market value of separate property due to its location or inflation is considered passive income. Bugos v. Bugos (Oct. 15, 1999), Trumbull App. No. 98-T-0141, unreported, at 8, 1999 Ohio App. LEXIS 4875, citing Munroe v. Munroe (1997), 119 Ohio App.3d 530,536.[3]
As a result, if there was some competent and credible evidence that the increase in the value of the dealership and the home was the result of either appellant's or appellee's contribution during the marriage, the increase in valuation would be properly classified as marital property. As marital property, such appreciation would be subject to an equitable distribution by the trial court.
In obtaining a valuation of property, the trial court must have before it sufficient evidence to justify or support the dollar figure it obtains. Rodriguez v. Rodriguez (Apr. 13, 1990), Geauga App. No. 89-G-1498, unreported, at 2, 1990 WL 47458. During the final contested divorce hearing, both sides presented evidence relating to the value of both the dealership and home. At the time the antenuptial agreement was entered into in 1989, the value of the dealership was listed in Exhibit "A" as $105,000, minus $5000 for equipment costs. When the hearing was held in 1994, the trial court determined that the current value of the dealership's inventory was $182,000.56.[4] As a result of this determination, the trial court found that the marital equity in the dealership was $82,008.56, which is the 1994 value minus the 1989 value. The trial court further found that the approximate $82,000 equity position was subject to the current floor plan liability of $29,000, equipment costs totaling $5,000, plus an $11,934.58 balance on a boat. As a result, the trial court determined that the final amount of marital equity in the dealership to be divided between the parties was $36,073.98.
As for the home, the antenuptial agreement listed its net value as $25,700. This figure was determined by subtracting two outstanding mortgages on the property, totaling $49,300, from the stated value of the home, which was listed as $75,000. At the 1994 hearing, testimony was presented showing that, as of that date, the first mortgage had been paid down to $29,900 from $31,300 and that the second mortgage had been paid down to $14,009.03 from $18,000. Using these numbers, the trial court found that the total pay down of the two mortgages was approximately $5,400, and the pay down had been accomplished with the participation of both parties. As a result, the trial court determined that the $5,400 was marital property subject to an equitable division.
Appellant does not challenge the trial court's valuation of the dealership or the home. Instead, appellant takes issue with the fact that the trial court found that the appreciation of the dealership and the home was marital property. In support, he argues that appellee never contributed any money or personal efforts toward running the dealership, and that she did not contribute any money toward maintaining the home.
Even if appellant's assertions were correct, the fact that appellee may or may not have personally contributed to the increased value of the property in question is immaterial.[5]
All that is required for a determination that appreciation is marital property for purposes of an equitable division is thateither party contributed to an increase in the value of separate property during the life of the marriage. The party awarded a portion of the appreciation is not personally required to actively contribute to the increase.
Appellant does not argue, nor could he, that the increased value of either the dealership or the home was due to passive appreciation. The record shows that the dealership's increased value was due in large part to the number of motor vehicles appellant had purchased for resale at his lot. In addition, the home's increased value can clearly be attributed to the fact that both mortgages had been paid down during the life of the marriage. See, generally, Goebel v. Werling (July 28, 1999), Summit App. 19385, unreported, at 3, 1999 Ohio App. LEXIS 3443 (holding that the reduction in a mortgage during the course of a marriage is equivalent to a marital investment and is considered marital property). See, also, Charles v. Charles (Jan. 22, 1997), Lorain App. No. 96CA006396, unreported, at 12-13, 1997 Ohio App. LEXIS 191.
Moreover, because appellant was the party seeking to have the appreciation of the dealership and the home labeled as separate property, he bore the burden of proof on that issue by a preponderance of the evidence. Letson v. Letson (Sept. 30, 1997), Trumbull App. No. 95-T-5356, unreported, at 3, 1997 WL 663514;Horning at 11.
After reviewing the entire record, we conclude that the trial court did not abuse its discretion in finding that the antenuptial agreement was invalid, except with respect to the value of the dealership and home. We also conclude that any increase in the value of either the dealership or the home was marital property pursuant to R.C. 3105.171(A)(3)(a)(iii). As a result, the trial court did not abuse its discretion when it ruled that the appreciation was not appellant's separate property. Furthermore, the trial court's conclusion is supported by competent and credible evidence in the record. Therefore, appellant's sole assignment of error is without merit.
Accordingly, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.
 __________________________ JUDITH A. CHRISTLEY, Judge
FORD, P.J., dissents with Dissenting Opinion,
O'NEILL, J., concurs.
[1] The matters which were initially left unresolved by the trial court were: (1) the calculation of appellant's child support arrearage; (2) determining the value of the floor plan of the dealership; and (3) supplementing the record as to the present-day value created during the term of the marriage in appellee's pension.
[2] The antenuptial agreement states, in pertinent part:
 "CONVENANTS[sic] IN EVENT OF DIVORCE AND/OR SEPERATION
 "1.) That in the event after marriage of the parties hereto they should separate and/or be unable to live together as husband and wife, and/or an action for divorce and/or alimony only is filed by either party, JEANNIE does hereby agree to waive any and all claims she may have against JERRY in the property described in the attached Exhibit "A".
"* * *
 "3.) JERRY and JEANNIE agree that the provisions made in this Agreement shall apply, irrespective of whether or not the parties hereto contribute their personal efforts, skills or services in the acquisition of any real and/or personal property by the party in whose name said property is titled."
[3] R.C. 3105.171(A)(4) defines "passive income" as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse."
[4] At the hearing, appellee had an appraiser testify concerning the value of the dealership. According to the appraiser, the fair market value of the dealership's inventory was $207,176. However, the trial court determined the testimony of appellant was more accurate and subsequently found that the value of the dealership's inventory was $182,008.56.
[5] During the hearing, appellee testified that, while she never paid anything toward the mortgages on the home, she did pay some of the utilities. Appellant testified to the same.