DECISION
{¶ 1} William S. Hemming, plaintiff-appellant, appeals the December 26, 2001 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, wherein the court granted him and Jennifer A. Hemming, defendant-appellee, a divorce.
{¶ 2} William and Jennifer were married on April 8, 1995, and two minor children were born as issue of the marriage. William filed his complaint for divorce on April 5, 1999. Custody issues were resolved prior to trial. The remaining issues regarding financial matters, child support, and attorney fees proceeded to trial on September 20 and 21, 2001, and on December 26, 2001, the court entered a judgment entry-decree of divorce.
{¶ 3} In the divorce decree, the court found that the de facto date of termination of the marriage was May 3, 1999. The court also made determinations regarding the parties' Summer Glen home in Grove City, Ohio, the Kiousville Palestine Road property ("farm property") in Madison County, Ohio, various checking and savings accounts, retirement benefits, motor vehicles, credit card debts, child support, and attorney fees. William now appeals this judgment, asserting the following assignments of error:
{¶ 4} "[I.] The trial court erred in characterizing husband's Dodge Caravan as marital property where there was no evidence to support this finding.
{¶ 5} "[II.] The trial court erred in the valuation of husband's separate property interest in the farm real estate where there was no evidence to support this finding.
{¶ 6} "[III.] The trial court abused its discretion in allocating the Star Bank savings account to the husband, where the parties agreed it was wholly depleted before the de facto termination date."
{¶ 7} We will address William's second and third assignments of error first. William argues in his second assignment of error that the trial court erred in the valuation of his separate property interest in the farm property where there was no evidence to support such a finding. The key question is whether an asset may be traced to a separate property source. Knight v. Knight (Apr. 12, 2000), Washington App. No. 99CA27, citing Peck v. Peck (1994), 96 Ohio App.3d 731, 734. The party seeking to establish that an asset or a portion of it is his or her own separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to the separate property source. Id.
{¶ 8} Prior to the parties' marriage, in June 1990, William purchased a home from his parents for $24,000. The property was located on Lamont Avenue in Columbus, Ohio. The record reveals that William owed a balance of $10,000 to his parents at the time of the marriage in 1995. Thus, William had a $14,000 separate interest in the property at the time of the marriage. In February 1996, the parties purchased 87.7 acres of farm property for $154,815.50. The parties made a down payment of $38,815.50 on the farm property. The parties agree that the down payment was made using a home equity loan against the Lamont Avenue property. The trial court indicated the equity in the farm property was $53,024 at the time of the divorce. However, the trial court found that only $14,000 of the equity in the farm property was William's separate property.
{¶ 9} William argues that the court should have found the entire $38,815.50 of the down payment was his separate property. He argues that he was the sole source of the down payment on the farm property because the funds were derived from the mortgage of his premarital real estate. However, his argument is unsupported by evidence and in law. "Marital property" includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]" R.C. 3105.171(A)(3)(a)(iii). "Separate property" in turn includes "[p]assive income and appreciation acquired from separate property by one spouse during the marriage[.]" R.C. 3105.171(A)(6)(a)(iii). Passive income is "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4). When either spouse makes a labor, monetary, or in-kind contribution that causes an increase in the value of separate property, the increase in the value is deemed marital. Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 400. On the other hand, appreciation, as a result of an increase in the fair market value of separate property due to its location or inflation, is considered passive income. Munroe v. Munroe (1997), 119 Ohio App.3d 530, 536.
{¶ 10} Because William seeks more than his $14,000 premarital interest, he has the burden of proving by a preponderance of the evidence that the appreciation of his separate interest was passive. Peck, supra, at 734. Although there was evidence that the house eventually sold for approximately $58,000 in 1998, William presented no evidence as to the appreciation in the home prior to the parties' marriage in 1995, if any, or the appreciation from 1995 to 1998. Therefore, we have no basis to determine the appreciation in the house or the appreciation in his separate interest during these periods.
{¶ 11} Despite William's failure to present any evidence on these issues, Jennifer presented evidence demonstrating that marital efforts and monies were used to increase the value of the home from 1995 to 1998, which, in turn, allowed the parties to obtain the second mortgage to finance the purchase of the farm property. She testified that she cleaned the Lamont Avenue property, completed yard work, installed windows, painted, helped build a shed, and helped select carpeting. The testimony also indicated that the property had no basement or garage; thus, the construction of the shed increased the storage capacity and increased the value and marketability of the property. Jennifer also helped William build a front porch, although William testified that that occurred prior to their marriage. Further, marital funds were used to pay the real estate taxes, water bills, gas bills, mortgage, and building materials. Jennifer also testified that the couple used marital funds to pay off the final $5,000 balance owed to William's parents for the Lamont Avenue property. William admitted that marital funds were used to reduce the second mortgage on the Lamont Avenue property. Also, Jennifer located the first tenant for the house, which was the brother of her sister's husband. Thus, it is apparent from the testimony and evidence presented at trial that significant value was added to the Lamont Avenue property as a result of marital funds and Jennifer's labor.
{¶ 12} William has failed to establish that the entire $38,815.50 should be considered his separate property. He presented no evidence that the increase in value of the Lamont Avenue property was due solely to his own premarital efforts, purely a passive fruit of his premarital interest in the property, or the result of the mere passage of time, inflation, or location, and this court will not speculate. See Munroe, supra, at 536. Given the lack of evidence presented by William, in combination with the testimony of Jennifer, the trial court did not err in finding that any appreciation in William's $14,000 separate interest and the appreciation in the Lamont Avenue property was marital property, as the appreciation largely was the result of the efforts of one or both of the parties during marital coverture, and not merely a passive appreciation. See Middendorf, supra (holding that an increase in the value of separate property due to either spouses efforts is marital property); R.C. 3105.171. Therefore, any increase in value of the Lamont Avenue property and William's $14,000 separate property interest was marital property subject to equitable distribution. William's second assignment of error is overruled.
{¶ 13} William argues in his third assignment of error that the trial court abused its discretion in allocating the Star Bank savings account to him when it was undisputed that the amount was wholly depleted before the de facto termination date. In May 1997, William opened a savings account in his sister's name and funded it with approximately $14,200, which consisted of accumulated monies from employment bonuses and one rental payment from the Lamont Avenue property for $1,035. He did not tell Jennifer that the account existed, claiming at trial that he believed his wife to be a spendthrift. William used part of these funds to pay for clothes, gifts, bills, and his attorney fees incurred at the beginning stages of this matter. He closed the account by cashing out approximately $469 in March 1999, approximately two months prior to his separation from Jennifer in May 1999.
{¶ 14} William argues that the court unfairly penalized him by ordering the $14,200 be attributed to his award as if the money still existed. We disagree. It is well-established that a trial court has broad discretion to determine what division of assets and liabilities is equitable in a divorce proceeding. Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 95. Further, R.C. 3105.171(E)(3) provides: "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." A court's decision whether to compensate an offended spouse is reviewed for abuse of discretion. See, e.g., Forster v. Forster (July 29, 1999), Cuyahoga App. No. 74137.
{¶ 15} In the present case, there is no dispute that appellant dissipated and concealed marital assets. He used the marital money for personal use, and to pay his attorney fees in this matter. The trial court listed the $14,209.31 from the Star Bank savings account in the husband's column of the asset distribution summary sheet. Because William received the sole benefit of these marital funds, coupled with his fraudulent concealment, pursuant to R.C. 3105.171(E)(3), the court was within its discretion to treat William's prior use of the funds as if he had received them pursuant to an award of marital assets. The trial court indicated its basis for its award in sufficient detail to enable this court to determine that award is fair, equitable, and in accordance with law. See Huener v. Huener (1996), 110 Ohio App.3d 322. We also note that although William testified that he paid "bills" with some portion of the Star Bank funds, he did not indicate whether these bills were for marital debts, and he failed to otherwise provide any accounting as to how the monies were spent. Thus, William's third assignment of error is overruled.
{¶ 16} William argues in his first assignment of error that the trial court erred in characterizing his Dodge Caravan as marital property. William purchased the Caravan, valued at $2,300, in the summer of 2001. In the judgment, the trial court ordered that William retain the Caravan. Although the court had found the de facto date of termination of the marriage to be May 3, 1999, in its distribution summary appended to the decree, the court designated the Caravan as marital property in allocating the marital and separate property.
{¶ 17} The trial court's characterization of property as either marital or separate necessarily involves a factual inquiry under the manifest weight of the evidence standard. Garish v. Garish (Mar. 10, 1998), Franklin App. No. 97APF06-813. Under this standard, the judgment of the trial court will not be reversed as being against the weight of the evidence if the court's decision is supported by competent, credible evidence. Id.
{¶ 18} Generally speaking, marital property includes either real and personal property or an interest in such property owned by one or both of the spouses and "acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i) and (ii). In contrast, separate property is excluded from the definition of marital property. R.C.3105.171(A)(3)(b). Generally, marital property is divided equitably, while separate property is awarded to its original owner. R.C. 3105.171(C) and (D).
{¶ 19} With these concepts in mind, we turn to the instant matter. William purchased the Caravan in the summer of 2001, over two years after the de facto date of termination of the marriage. Jennifer concedes in her brief that the Caravan was William's separate property. Thus, this property was not acquired during the parties' marriage as required by R.C. 3105.171(A)(3)(a)(i) and (ii), and the trial court erred in characterizing the Caravan as marital property.
{¶ 20} However, Jennifer argues that even if the court erred in characterizing the Caravan as marital property, such error was harmless. Jennifer asserts that even if the Caravan is removed from consideration as an asset, the trial court's division was still equitable. Once property has been characterized as separate or marital property, it is within the discretion of the trial court to fashion an equitable division of the property. As indicated above, a trial court is vested with broad discretion in making divisions of property in domestic relations cases. Middendorf, supra, at 401. Accordingly, we will uphold a trial court's decision regarding the division of property absent an abuse of that discretion. Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295. An abuse of discretion is more than merely an error of judgment; it connotes a decision that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
{¶ 21} According to the trial court's distribution summary, it awarded Jennifer a total of $62,291.14 in marital assets. Including the Caravan, the court awarded William $64,690.31. Subtracting the $2,300 Caravan from William's total marital asset distribution, William received $62,390.31. Thus, even without the Caravan being considered a marital asset, William still received approximately $100 more in the division of marital assets than Jennifer. In neither William's merit brief nor reply brief does he even allege that the error in characterizing the Caravan as marital property caused an inequitable division of marital assets. A trial court's error in improperly categorizing separate property as marital property must be prejudicial in light of the total circumstances. See Patterson v. Patterson (Feb. 19, 1988), Greene App. No. 87 CA 0044. In reviewing the total distribution, and in light of our determinations regarding William's second and third assignments of error, we agree with Jennifer that the trial court's mischaracterization of the Caravan as marital property was harmless error. Because it is harmless error, William's first assignment of error is overruled.
{¶ 22} Accordingly, we overrule William's three assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.
Judgment affirmed.
LAZARUS and KLATT, JJ., concur.