DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Lynda C. Hawkins-Pappas, appeals from a decision and judgment entry by the Lucas County Court of Common Pleas, Domestic Relations Division, which granted a divorce between appellant and appellee, John L. Pappas. For the reasons that follow, the order of the trial court in dividing the marital assets and setting spousal support is affirmed.
 {¶ 2} The parties were married on April 19, 1986, and had no children together. Appellee filed his initial complaint for divorce on January 14, 2004. A final divorce hearing was held before a judge on January 21, 2005.
 {¶ 3} On March 18, 2005, the trial court issued a final decree of divorce, which relevantly provides:
 {¶ 4} "1. This is an eighteen-year (18) plus marriage. The Parties were married on April 19, 1986. This is the second marriage for both. Wife did not want this divorce.
 {¶ 5} "2. Husband and Wife have resided in the State of Ohio for at least six (6) months, and the County of Lucas for ninety (90) days, immediately preceding the filing of the Complaint.
 {¶ 6} "3. The parties have lived separate and apart since January 2003.
 {¶ 7} "4. The parties stipulated the following facts:
 {¶ 8} "a. The marital home located at 2840 Winsted, Toledo, Ohio, has a fair market value of $55,000.00. There is a mortgage to Husband's Mother for $17,892.00. Since December 2002, they have not been able to pay the mortgage payments of $390.00 per month.
 {¶ 9} "b. Wife shall be awarded the 1984 motor home, the value of which is unknown.
 {¶ 10} "c. Husband shall be awarded the 1982 Oldsmobile and 1996 Mercury motor vehicle with a combined value of $3,500.00.
 {¶ 11} "d. Wife shall retain the vacant lot on Locust Street as her separate property. This property has minimal value.
 {¶ 12} "e. Wife receives $226.00 from Social Security for her visual impairment. She is legally blind and visually impaired from an industrial accident.
 {¶ 13} "f. Husband is a truck driver for JB Leasing Co. His income in 2002 was $37,725.00; 2003 was $35,387.00; 2004 was 38,771.00 as of December 17, 2004.
 {¶ 14} "g. Husband shall take his personal items and clothing. Wife shall keep the remaining household goods and her personal items.
 {¶ 15} "h. Husband has no pension or retirement.
 {¶ 16} "i. Husband agreed to pay the marital debts.
 {¶ 17} "j. On September 20, 2004, Lucas County Probate Court found Wife to be incompetent and appointed her daughter, Lisa Smith, as the Guardian of her person and estate.
 {¶ 18} "5. Wife is 52 years old (3-14-52) and in poor health. She is unemployed and the Court finds she is unable to work. Husband is 60 years old (5-14-44) and in good health. He plans to work in his present occupation.
 {¶ 19} "6. Lisa Smith, Wife's daughter, testified that her Mother had a traumatic life. Wife has been hospitalized four times, the most recent hospitalization was this past summer. During the marriage, she worked on the line at Jeep for two to three years until she was injured when a paint speck caused her legal blindness. She received $87,000.00 for this injury. The parties spent these funds. Because Wife is legally blind, she cannot drive and she uses a taxi for her errands and appointments. Lisa Smith stated that she had no copies of bills for her mother. She only knew that the amount of support proposed by Husband was not adequate. Her mother's prescriptions cost more than $500.00 per month. Her mother is eligible for Medicare and she presently has a $30.00 co pay.
 {¶ 20} "7. Husband stated that he has lived in his truck since the separation. He has continued to pay all of Wife's expenses and the marital bills. He has $2,800.00 in his checking account. He testified and submitted outstanding bills [Fn1] that total $29,489.44.
 {¶ 21} [Fn1] "Discover $9,787.68; Chase (1) $2,629.68; Chase (2) $3,112.71; JCPenney $1,507.31; ADT $290.35; K Adler, MD $509.63; Elite $3,936.67; Doumet, MD $275.00; Summit Urology $3,166.22; Flower Hospital $812.00; Finance System $122.00; National City $3,340.19 (Wife's TV).
 {¶ 22} "8. Throughout the marriage and the separation, Husband paid Wife's expenses. He estimated that her monthly expenses were approximately $900.00. He did not include the mortgage, utilities, taxes or medical expenses. Throughout the marriage, the parties had a modest standard of living and spent more than Husband earned. Clearly, there are insufficient funds to support either party's basic needs.
 {¶ 23} "9. A big issue in this case was the fact that in the year 2000, when his Father died, Husband and his brother became Co-Trustees with their Mother in the John and Bernice I. PappasRevocable Trust that is in Florida. Husband did not know of the value of this trust and stated that it was for the benefit of his Mother as long as she lives. He stated he could not use the assets from this trust to pay his bills. This is clearly Husband's separate property. This Trust does not have a present benefit for either party. However, when Husband receives his inheritance, it may have a future benefit as to Husband's ability to pay spousal support.
 {¶ 24} "10. Wife's outstanding attorney's fees are $5,328.00 * * *. Wife also owes her first attorney, Lynda Sorah, $1,795.00. The parties first filed a case in 2002, and dismissed it in 2003. Husband agreed to pay Wife's attorney bill. * * *
 "ORDER {¶ 25} "1. Husband is granted a divorce on the grounds that he and his Wife have, without interruption for one year, lived separate and apart without cohabitation.
 {¶ 26} "2. For the purpose of making a division of marital property, the period of time "during the marriage" was from the date of the marriage through the day of trial.
 {¶ 27} "3. In making a division of marital property, the Court considered all relevant factors in O.R.C. § 3105.171(C)(I), including factors set forth in Division (F) of O.R.C. § 3105.171. An equal division of all assets is inequitable because Husband agreed to pay the outstanding marital bills.
 {¶ 28} "4. Wife shall be awarded the marital residence subject to Husband's equity interest of $18,554.00, representing Husband's fifty percent (50%) of the net equity. Within ninety (90) days of the filing of this Decision and Judgment Entry of Divorce, Wife shall refinance the residence so as to remove Husband's name from the mortgage and to pay Husband the sum of $18,554.00. At the time of the filing of this Decision and Judgment Entry of Divorce, Husband shall execute a quit-claim deed in favor of Wife divesting him of all interest in the marital residence. Husband shall be solely responsible for the existing mortgage, taxes and insurance for ninety (90) days from the filing of this Decision and Judgment Entry of Divorce, or until the home has been sold and the proceeds divided equally. If Wife does not want to retain the residence, or is unable to pay Husband's equity interest within the specified time period, the house shall be placed for sale. If the parties are unable to agree as to a realtor or sale price, the parties' attorneys shall make these decisions. The parties shall share equally any costs related to the sale of the residence and equally share the net proceeds. The court reserves jurisdiction of the real estate until the parties have resolved this issue.
 {¶ 29} "5. Wife shall keep the 1984 motor home and the vacant lot as her separate property. She shall keep her personal property and the household furnishings she chooses. Because Husband is paying substantial debts, he shall keep his motor vehicles and bank account. Wife shall give to Husband his personal belongings.
 {¶ 30} "6. Husband shall indemnify and hold Wife harmless on the marital debts as identified in footnote number one, Attorney Sorah's bill in the amount of $1,795.00, and one-half of Attorney Kirshner's fee, which is $2,664.00. Wife shall be responsible for her separate debts that she may have and did not submit at trial, the remaining balance of the National City Bank loan for a TV that she purchased during the pendency of this case and one-half of Attorney Kirshner's fee which is $2,664.00.
 {¶ 31} "7. The Court considered all of the spousal support factors and finds that spousal support is appropriate and reasonable. O.R.C. § 3105.18(C)(1). In particular, the Court considered Wife's mental and physical disabilities and her inability to work, the length of the marriage, and the facts that there are limited assets and major liabilities, and no pension or retirement funds.
 {¶ 32} "8. Effective March 1, 2005, and subject to the continuing jurisdiction of this Court, Husband shall pay to Wife spousal support in the amount of $275.00 per week, which is $14,300.00 per year. He shall pay Wife these dollars on the date he receives his check. * * * Spousal support shall continue thereafter until the death of either party, wife's remarriage, or further order of the Court, whichever occurs first.
 {¶ 33} "9. The Court may modify the amount or term of this spousal support order upon the change of circumstances of either party, which includes, but is not limited to, any increase or involuntary decrease in the parties' wages, salary, bonuses, living expenses or medical expenses. O.R.C. § 3105.18(E)(1) and (F).
 {¶ 34} "10. If either party discharges in bankruptcy any of the obligations set forth in this Order, the Court reserves jurisdiction to continue and/or to modify spousal support.
 {¶ 35} "11. Effective March 1, 2005 each party shall be responsible for his or her health insurance and expenses. Husband shall be responsible for any of Wife's medical expenses not covered by his insurance or Medicare to this date. Husband shall give to Wife the COBRA forms if applicable.
 {¶ 36} "* * *
 {¶ 37} "13. After application of the initial filing fee(s), Husband shall pay the remaining court costs." * * *
 {¶ 38} On April 22, 2005, appellant filed her appeal to the final decree of divorce, raising the following assignments of error:
 {¶ 39} I. "IN SETTING SPOUSAL SUPPORT THE TRIAL COURT ERRED IN FAILING TO CONSIDER MR. PAPPAS'S FAMILY TRUST OF WHICH HE IS A COT-RUSTEE WITH THE RIGHT TO RECEIVE CURRENT INCOME AS WELL AS PRINCIPAL DISTRIBUTIONS.
 {¶ 40} II. "THE TRIAL COURT ERRED IN ORDERING MRS. PAPPAS TO PAY MR. PAPPAS'S EQUITY IN THE HOME IN NINETY (90) DAYS."
 {¶ 41} We first examine appellant's second assignment of error, wherein she claims it was error for the trial court to order her to pay appellee within 90 days his portion of the equity in the marital home. In determining a division of marital property, the trial court must consider the factors set forth at R.C. 3105.171(F). Id. Those factors include:
 {¶ 42} "(1) The duration of the marriage;
 {¶ 43} "(2) The assets and liabilities of the spouses;
 {¶ 44} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 45} "(4) The liquidity of the property to be distributed;
 {¶ 46} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 47} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 48} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 49} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 50} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 51} In addition, a trial court must make written findings of fact that support a determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage." R.C.3105.171(G).
 {¶ 52} To effect an equitable division of marital property, a court may issue "[a]n order requiring the sale or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court." R.C. 3105.171(J)(2).
 {¶ 53} The trial court has broad discretion in deciding what division of property is equitable. Cherry v. Cherry (1981),66 Ohio St.2d 348, paragraph two of the syllabus. Appellate review of a trial court's division of property is limited to a determination of whether the trial court abused that discretion.Wilson v. Wilson (July 24, 1996), 9th Dist. No. 95CA0089. An abuse of discretion is more than an error of judgment; it means that the trial court's determination was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 54} In the instant case, the trial court found that "[a]n equal division of all assets is inequitable because Husband agreed to pay the outstanding marital bills." Specifically, husband-appellee agreed to pay outstanding marital bills totaling $29,489.44. As indicated above, the trial court found that although the parties had enjoyed only a modest standard of living throughout their marriage, they had always spent more than appellee earned. In addition, the trial court found that there were insufficient funds to support either party's basic needs.
 {¶ 55} In an attempt to allow appellant to keep her home, the trial court awarded her the marital residence, subject only to appellee's equity interest of $18,554, which represented his 50 percent of the net equity. The trial court's decision specified that, if appellant chose to keep the residence, she had 90 days in which to refinance the home so as to remove appellee's name from the mortgage and to pay appellee his portion of the equity. The decision further provided that if appellant failed to timely refinance, the house would be put up for sale.
 {¶ 56} Appellant offered no evidence to suggest that she would have any difficulty in refinancing the home. As indicated above, the record demonstrates that the only encumbrance on the $55,000 property was a mortgage to appellee's mother in the amount of $17,892 (which debt appellee agreed to assume). Thus, there appears to be ample equity in the home to pay appellee what he is due.
 {¶ 57} Appellant suggests that the trial court's order should have provided that appellee could receive his equity either at the time of appellant's death or when her house was sold.[1] We disagree.
 {¶ 58} In light of the small amount of marital assets, the large debt that was voluntarily assumed by appellee, and the lack of evidence to suggest that appellant would have any difficulty refinancing the property, we find that the trial court acted reasonably and within its discretion in ordering appellant to refinance within 90 days or else be forced to sell the home. Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 59} We turn to appellant's first assignment of error, wherein she argues that the trial court erred in setting spousal support when it failed to consider appellee's family trust.
 {¶ 60} Just as the trial court has broad discretion in matters pertaining to the division of property, Cherry, supra, the trial court also has broad discretion in matters pertaining to spousal support. Bucalo v. Bucalo, 9th Dist. No. 05CA0011,2005-Ohio-6319, at ¶ 43. Thus, an appellate court should not disturb a trial court's decision regarding spousal support obligations absent an abuse of discretion. Id. As indicated above, an abuse of discretion implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore,5 Ohio St.3d at 219.
 {¶ 61} R.C. 3105.18(C)(1) sets forth factors that the court is to consider in determining whether, and in what amount, spousal support is appropriate. Among those factors is "[t]he income of the parties, from all sources * * *", R.C.3105.18(C)(1)(a), and "[t]he relative assets and liabilities of the parties", R.C. 3105.18(C)(1)(i).
 {¶ 62} A reviewing court should not reverse a trial court's findings regarding a party's income or assets if the findings are supported by some competent, credible evidence in the record. See Bucalo, supra, at ¶ 44, citing Jaroch v. Madalin, 9th Dist. No. 21681, 2004-Ohio-1982, at ¶ 8.
 {¶ 63} As indicated by the trial court, in the year 2000, when appellee's father died, appellee and his brother became co-trustees with their mother in the John and Bernice I. PappasRevocable Trust, which is located in Florida. In refusing to consider the trust assets for purposes of setting spousal support, the trial court found that although the trust assets constitute separate property belonging to appellee, they have no present benefit for him or appellant.
 {¶ 64} Appellant disputes this conclusion, citing a statement in a letter from Florida attorney Frank J. Reiff, III, wherein Reiff acknowledges that "[u]nder the terms of the Family Trust,the trustees may distribute to or for the benefit of Mrs. Pappas, the sons (John and Gregory) and any descendants of the sons all or any part of the net income or all or any part ofthe principal for their use and benefit as the trustees deem advisable taking into consideration all of the resources available to them." (Emphasis added.) According to appellant, such statement refutes the trial court's determination that the trust "does not have a present benefit" for either appellant or appellee.
 {¶ 65} Our review of the record reveals that appellant's argument is based on an oversimplification of the evidence that ignores appellee's overwhelming demonstration that as long as appellee's mother is alive, the trust benefits only her, and that, although appellee will likely have the ability to access trust proceeds upon his mother's death, he has not yet received, nor is he presently able to receive any money from the trust.
 {¶ 66} Not only did appellee specifically testify that he never received any money from the trust, he recounted one instance during which he attempted to reach the trust assets, but was denied because his mother was still living. Appellee further testified that, in his current role as co-trustee, he merely provides guidance in connection with his mother's investment decisions.
 {¶ 67} Both appellant's counsel and the trial court acknowledged familiarity with the type of trust involved here, wherein the trust is separated into two parts, with one part benefiting the grantor's spouse, and the other part benefiting the grantor's children. And despite the Florida attorney's indication of appellee's ability to access the trust assets, both appellant's counsel and the trial court noted that where there is such a two-part trust, the part that is in the spouse's name gets spent, but the part that is in the children's names does not. At trial, the court relevantly commented, "I would find it very strange if [appellee] could take from this Trust fund while his mother lives. It has to say that [the children have the right to current distributions] for tax purposes in order to get the unified credit, but people don't take the money out, because the mother needs it."
 {¶ 68} Although the trial court expressed doubt with respect to appellee's alleged inability to determine the amount of money that is in the trust, it was unwilling to draw from that doubt any inference that appellee has a current ability to reach the trust assets.[2] We find no error in this reasoning.
 {¶ 69} Based on all of the foregoing, we find that the trial court's conclusion that the trust has no present benefit for the parties is amply supported by competent, credible evidence in the record, and that the trial court did not abuse its discretion in failing to consider appellee's family trust in setting appellant's spousal support award. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 70} Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Skow, J., concur.
[1] Presumably, appellant is referring to a voluntary sale, rather than a forced sale.
[2] According to appellee, he was unable to get evidence of the amount of the trust because his mother's attorney was of the opinion that she should not have to disclose that information.