JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Nicole Dietrich (Nicole) appeals the trial court's final decree of divorce, specifically its decision to adopt defendant-appellee Mark Dietrich's (Mark) proposed shared parenting plan and its decision regarding the marital residence.
 {¶ 2} On June 2, 2004, Nicole filed a complaint for divorce against her husband, Mark. On June 18, 2004, Mark filed the same. The two actions were consolidated in the trial court.
 {¶ 3} Mark and Nicole married on May 24, 1997, and had three children: Kayla Dietrich (Kayla), born October 22, 1997, and permanently disabled with cerebral palsy; and twins Malina Dietrich (Malina) and Noah Dietrich (Noah), born April 23, 2003.
 {¶ 4} During the marriage, Mark worked full time as a United States postal worker, and Nicole stayed home to care for the children.
 {¶ 5} Mark and Nicole submitted separate proposed shared parenting plans. The trial court ordered Family Conciliation Services (FCS) to render an opinion in the matter. FCS psychologist Nancy Huntsman (Huntsman) conducted psychological testing, made a home visit, and recommended shared parenting.
 {¶ 6} Huntsman also noted that Kayla undergoes a series of treatments for cerebral palsy, including speech therapy, occupational therapy, and physical therapy. Kayla also attends school in the afternoon. Almost Family, an organization that provides caregivers to Mark and Nicole for Kayla with the help of Medicaid, agreed to continue providing care at *Page 4 
both Mark's and Nicole's residences.
 {¶ 7} Concerning the marital property, it must be noted that prior to their marriage, Mark purchased a home on 8402 Pelham Drive, Parma, Ohio, with a down payment of $41,749.77. Mark and Nicole continued to reside at the Pelham Drive home until March 2002. Thereafter, Mark and Nicole made a $64,821.26 down payment on 2671 Bramblewood Drive, Broadview Heights, Ohio, which included proceeds from the sale of the Pelham Drive home.
 {¶ 8} The matter proceeded to trial on June 22 and 23, 2005, and continued on October 4, November 3, 2005, and January 17, 2006.
 {¶ 9} On April 21, 2006, the trial court issued its final decree of divorce that adopted Mark's proposed shared parenting plan, designated both parents as residential parents and legal custodians, and established child support as it pertained to the children. The trial court also granted spousal support, awarded Nicole the marital residence, and ordered Nicole to pay Mark for his interest in the marital residence within two years.
 {¶ 10} The parties appealed, and we affirmed in part, reversed in part and remanded. See Dietrich v. Dietrich, Cuyahoga App. No. 88168,2007-Ohio-2495 (Dietrich I). (Finding that the trial court failed to set forth findings of fact and conclusions of law as it pertained to adoption of Mark's proposed shared parenting plan, and that the trial court erred regarding the amount of Mark's interest in the marital home.)
 {¶ 11} On September 21, 2007, the trial court issued a journal entry adopting Mark's *Page 5 
proposed shared parenting plan setting forth its findings of fact and conclusions of law and also recalculated Mark's interest in the marital home.
 {¶ 12} Nicole appeals, asserting three assignments of error for our review.
ASSIGNMENT OF ERROR NUMBER ONE
 "The trial court erred in its allocation of parental rights and responsibilities by failing to designate appellant/mother as residential parent/legal custodian; or in the alternative, erred in failing to adopt the shared parenting plan presented to the court by appellant/mother."
 {¶ 13} Nicole argues that the trial court erred when it failed to designate her as residential parent/legal custodial. In the alternative, Nicole argues that the trial court erred when it failed to adopt her proposed shared parenting plan.
 {¶ 14} As it pertains to parental rights, we afford the trial court great deference upon review. Miller v. Miller (1988), 37 Ohio St.3d 71. Therefore, we review allocation of parental rights and responsibilities upon an abuse-of-discretion standard. Davis v. Flickinger,77 Ohio St.3d 415, 1997-Ohio-260. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217.
 {¶ 15} In doing so, a trial court is required to consider whether a proposed shared parenting plan is in the best interest of the children pursuant to the factors set forth in R.C. 3109.04(F)(1) and3109.04(F)(2). Robinette v. Robinette, Cuyahoga App. No. 88445,2007-Ohio-2516.
 {¶ 16} As the Tenth District aptly noted in Archer v. Nationwide Ins.Co. (1993), *Page 6 
Franklin App. No. 93AP-620:
 "We * * * observe that Ohio's statute on the allocation of parental rights and responsibilities expresses a strong presumption that shared parenting is in the best interests of the child. R.C. 3109.04. Absent compelling evidence to the contrary, the amended decree of divorce should be construed as intending to provide the children with dual residences."
 {¶ 17} Thus, the trial court is required to consider the factors set forth in R.C. 3109.04(F)(1), which includes but is not limited to:
 "(a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an *Page 7 abused child * * *; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; * * * and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 18} In applying R.C. 3109.04(F)(1) to the facts of this case, we find that both parties requested shared parenting. The children share quality interactions and interrelationships not only with Mark and Nicole, but also with each other, with certain extended family members, and also with their caregivers. The children are well adjusted to home, school, and their community. Kayla has adjusted well to the first grade in mainstreamed, full-time school. Kayla's mental and physical health is a priority for both parents. All other persons involved have good mental and physical health. Both parties appear equally likely to honor and facilitate court-approved parenting time rights and visitation.
 {¶ 19} Additionally, the trial court is required to consider R.C. 3109.04(F)(2), which includes the following: *Page 8 
 "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
 (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."
 {¶ 20} In applying R.C. 3109.04(F)(2) to the case sub judice, it is clear that the parties are able to cooperate and make joint decisions respecting the children. They are also able to encourage the sharing of love, affection, and contact between the children and other parent. There is no history of or potential for child abuse, spousal abuse, other domestic violence or parental kidnapping by either parent. The parents are also in rather close geographic proximity to each other.
 {¶ 21} Furthermore, not only did both parties submit proposed shared parenting plans, but Huntsman recommended shared parenting as well. In fact, all of the professionals involved in this case, including therapists, the speech pathologist and caregivers fail to give any reason why shared parenting is not in the best interest of the children.
 {¶ 22} As a result of the divorce, Nicole will need to work outside of the home, possibly including weekend hours. Mark is eager to spend more time with the children and is available on the weekends. As such, the adopted shared parenting plan also allows Nicole to *Page 9 
work needed weekend shifts and Mark to spend that time with the children. Current caregivers from Almost Family are also committed to providing services in both parties' homes for Kayla.
 {¶ 23} The trial court made express findings of fact and conclusions of law incorporating R.C. 3109.04. In light thereof, we cannot find that the trial court abused its discretion when it did not designate Nicole as residential parent or legal guardian. Nor did the trial court abuse its discretion when it failed to adopt Nicole's proposed shared parenting plan.
 {¶ 24} Nicole's first assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER TWO
 "The trial court erred and abused its discretion by not considering all the factors listed in ORC 3105.171(F) in regard to the disposition of the marital residence."
 {¶ 25} Nicole argues that the trial court erred in failing to consider all factors set forth in R.C. 3105.171(F) when it disposed of the marital residence.
 {¶ 26} Division of marital property is reviewed under an abuse-of-discretion standard. Berish v. Berish (1982),69 Ohio St.2d 318.
 {¶ 27} The trial court is charged with determining what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Regarding the same, we have held that:
 "R.C. 3105.171 provides the statutory framework for division of marital property. The statute directs the court to divide marital property equally, *Page 10 unless an equal division would be inequitable. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court is required to consider the factors set forth in R.C. 3105.171(F)." Terry v. Terry (1994), 99 Ohio App.3d 228.
 {¶ 28} Pursuant to R.C. 3105.171(F), the trial court is required to consider the following factors:
 "(1) The duration of the marriage;
 (2) The assets and liabilities of the spouses;
 (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 (4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 (9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 29} Specifically, Nicole argues that the trial court failed to consider three factors set forth in R.C. 3105.171(F), namely: the desirability of awarding the family home or the *Page 11 
right to reside in the family home to the spouse with custody of the children; the cost of sale; and third, other factors that the trial court finds relevant and equitable.
 {¶ 30} In Dietrich I, pertaining to disposal of the marital residence and calculation of passive appreciation, we found that "the domestic relations court went seriously awry when it attempted to apply the formula proposed by the court in Munroe v. Munroe (1997),119 Ohio App.3d 530 * * * to calculate appellee's separate interest in the Bramblewood Drive property."
 {¶ 31} On remand, the trial court found that Mark failed to establish the amount of passive appreciation on his $39,915 initial investment in the home, and thus, Munroe cannot be applied. Accordingly, the trial court determined that Mark's separate property interest is limited to the amount of his premarital down payment of $39,915, and that the remainder of equity in the Bramblewood Drive property is subject to equal division.
 {¶ 32} As such, the trial court's division of equity, $20,346 to Mark and $26,238 to Nicole, is clearly fair and equitable in light of the fact the trial court divided the sum total of all marital property equally between Mark and Nicole. Further, it is clear that the trial court considered all factors set forth in R.C. 3105.171(F).
 {¶ 33} The trial court did not abuse its discretion when it disposed of the marital residence on Bramblewood Drive.
 {¶ 34} Nicole's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE *Page 12 
 "The trial court erred and abused its discretion by not considering how difficult it would be for appellant/mother to avoid selling the marital residence and by making an impractical and illogical disposition of property."
 {¶ 35} Nicole argues that the trial court erred because it failed to consider how difficult it would be for her to avoid selling the marital residence. Nicole also argues that the trial court erred when it impractically and illogically disposed of the property. In support thereof, Nicole cites to Pappas v. Hawkins-Pappas, 6th
Dist. No. L-05-1138, 2006-Ohio-477 and Gills v. Gills (1994), 11th Dist. Nos. 93-L-191 and 93-L-194.
 {¶ 36} However, a review of the aforementioned case law reveals that it has no bearing on our ruling on Nicole's second assignment of error. In Pappas, Gills, and in the case sub judice, the trial courts applied R.C. 3105.171 in dividing the parties' property and was thereafter reviewed upon an abuse-of-discretion standard.
 {¶ 37} Nicole's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 13 
SEAN C. GALLAGHER, P.J., CONCURS.
ANN DYKE, J., CONCURRING IN PART AND DISSENTING IN PART (SEE SEPARATE OPINION).